IN THE UNITED STATES BANKRUPTCY COURT FOR

THE EASTERN DISTRICT OF VIRGINIA

RICHMOND DIVISION

In re:

**Dr. Kandise N. Lucas,**

Debtor.

**Case No. 3:20-ap-03143**

**Chapter 13**

## MOTION TO RE-OPEN CLOSED CASE AND RESCIND DISCHARGEABILITY DECISION

## UNDER §523(a)(6) BASED ON FRAUD UPON THE COURT BY SIMON AND RITTER

**TO THE HONORABLE COURT:**

COMES NOW, **Dr. Kandise N. Lucas, pro se,** and respectfully submits this **Motion to
Re-Open Closed Case** and **Rescind the Decision Regarding Dischargeability under 11
U.S.C. §523(a)(6),** for the purpose of rectifying the decision rendered in **Case No.
3:20-ap-03143,** specifically the judgment of **willful and malicious injury,** based on **fraud upon
the court** and newly discovered evidence of fraudulent actions by **Amanda Simon** and Tynesia
Giles, her former co-worker and witness in the Simon v. Lucas circuit court proceeding.

## I. INTRODUCTION

1

This Motion arises from the **dischargeability** proceeding under **11 U.S.C. §523(a)(6)**, involving a judgment entered by this Court that found Dr. Kandise N. Lucas liable for **willful and malicious injury** related to claims made by **Amanda Simon**. The decision rendered on this matter was obtained through **fraudulent actions** by Simon, as outlined in the newly discovered evidence presented in this Motion.

Dr. Lucas seeks to have this Court **re-open** the case due to the **fraud upon the court** perpetrated by the parties involved. Specifically, **fraudulent misrepresentations and concealment of critical evidence** by Simon prevented Dr. Lucas from presenting a full and fair defense in both, the circuit court and bankruptcy proceedings, and directly led to an unjust decision being made regarding the default judgement and dischargeability of the debt.

## II. BACKGROUND AND NEWLY DISCOVERED EVIDENCE

1. **Fraudulent Concealment of Exculpatory Evidence**:

   Newly discovered evidence, obtained through a FOIA request by Mrs. Wendy Little in 2024 and further investigation, includes critical documentation that reveals fraudulent practices used to manipulate judicial proceedings in both the Chesterfield Circuit Court and this Bankruptcy Court. Specifically:

   o **Amanda Simon**, Tynesia Giles, Dr. William Burke, and Laurie Burke; all conspired against Dr. Lucas; knowing that Simon had filed perjured truancy complaints against families to circumvent the families' IDEA rights to determine the educational placements of their students. This lawfare conspiracy was part of

a coordinated effort to retaliate against those who advocated for students with disabilities.

o   The **"Eryn Little Procedures"**, a set of fraudulent procedures obtained through FOIA, demonstrate that these parties were actively involved in conspiring to violate the rights of families and obstruct due process by maliciously criminalizing parents who complied with medical/mental health directives mandating medical homebound instruction for their students as well as for students who required private day placement. These documents were not made available during the civil nor the bankruptcy proceedings but are essential in showing that the allegations against Dr. Lucas were based on falsehoods and malicious intent, and that Dr. Lucas is in fact, a whistleblower; exposing the intentional and willful collusion of school divisions and their outsourced counsel to maliciously prosecute Parents/Guardians for exercising their rights under the IDEA, US Constitution, and Virginia Constitution.

2. **Fraud Upon the Court**:

It is evident that **fraud upon the court** occurred at the circuit and federal levels, as **Amanda Simon** and **Tynesia Giles** both engaged in **misrepresentation and concealment of critical evidence** that would have likely resulted in a different outcome in the civil and bankruptcy proceedings. Their fraudulent conduct in the **Chesterfield Circuit Court** and **bankruptcy court** deprived Dr. Lucas of her right to a fair trial and to properly contest the claims brought against her. As such, the **decision** finding that Dr.

Lucas's debt was **dischargeable under §523(a)(6)** due to **willful and malicious injury** is the product of these fraudulent acts and *must* be rescinded.

3. **Newly Discovered Testimony:**

Additional testimony and evidence from witnesses, including **Tynesia Giles**, the current Director of School Social Work for Chesterfield County Public Schools and former witness for Simon, revealed that the claims against Dr. Lucas were fabricated as part of a broader conspiracy to harass, intimidate, and retaliate against her for her advocacy on behalf of students with disabilities. Giles also testified, under oath, during the Eryn Little due process proceeding in December 2023, that attendance is a "functional skill" that is to be addressed by an IEP Team, not a school social worker via truancy charges. This damning admission by Giles was not available at the time of the civil nor bankruptcy proceedings, and is crucial in establishing that the lawsuit against Lucas by Simon was not only false but maliciously intended by Simon, Giles, and several other bad actors.

## III. LEGAL ARGUMENT

### A. Legal Standard for Re-Opening a Bankruptcy Case

Under **11 U.S.C. §350(b)**, a bankruptcy case must be **reopened** by the court for the purpose of receiving new evidence, if the court finds that **fraud upon the court** or **newly discovered evidence** warrants such action. Courts have long held that **fraudulent misrepresentations and concealment of critical evidence** are grounds for vacating judgments or reopening bankruptcy cases.

As the Fourth Circuit held in *In re Stancil*, 113 F.3d 1213 (4th Cir. 1997), a bankruptcy court has the authority to reopen a case and reconsider the dischargeability of a debt if it finds that **fraud was perpetrated during the course of the proceedings**. In this case, the newly discovered evidence and **fraud upon the court** by Simon, and Simon and Giles at the circuit court levels; justify the reopening of this case, vacating of the dischargeability decision, and sanctioning of Simon.

## B. Fraud Upon the Court and the Legal Precedents

The doctrine of fraud upon the court allows a court to vacate *any* decision obtained through fraud, perjury, or concealment of evidence. The Supreme Court has recognized that fraud upon the court undermines the very integrity of the judicial process and justifies the vacating of judgments to preserve fairness and justice. See *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944). In this instance, the fraudulent conduct of Simon, (and Giles at the circuit level), must lead this Court to vacate its prior decision, rescind the dischargeability ruling, and issue severe sanctions against Simon to ensure recompense for Lucas and the families that she advocates on behalf of.

## C. Willful and Malicious Injury under §523(a)(6)

The dischargeability provisions of 11 U.S.C. §523(a)(6) specify that a debt may be discharged if it results from willful and malicious injury. However, the fraudulent actions of Amanda Simon (and Giles as her witness in the circuit court case), are consistent with a pattern of malicious prosecution and abuse of the judicial process. The facts now available via the "Eryn Little Procedures," completely discount the that the injury alleged by Simon was not the result of any actions by Dr. Lucas, but rather the result of intentional, fraudulent, and malicious actions by

Simon and her co-conspirators. In fact, the "Eryn Little Procedures" definitively affirm that Dr. Lucas' assertion of Simon filing what she knew to be fraudulent criminal truancy complaints were in fact, a vital component of the "Eryn Little Procedures," intended to disenfranchise, criminalize, and demonize families that dare to assert their right to determine the educational placements of their students under the IDEA.

**The "Eryn Little Procedures" Intentionally and Willfully Obstruct Parental Rights:**

| Source | Legal Principle |
|---|---|
| **IDEA (20 U.S.C. § 1415)** | Parents have the right to be involved in all special education decisions, including placement, and must provide informed consent. (Judges cannot override this right and make unilateral educational placement decisions.) |
| **U.S. Constitution (14th Amendment)** | Parents have a fundamental right to direct their children's upbringing and education (Pierce, Meyer, Troxel). |
| **Virginia Constitution + Code § 1-240.1** | Virginia recognizes and protects the fundamental right of parents to control their children's education and care. |

As such, this Court **must** find that the injury was not willful and malicious under §523(a)(6),

therefore **must** rescind its prior decision, and must sanction Simon, Giles, and any other

co-conspirators for their egregious actions that have resulted in irreparable harm for Lucas and

the families that she advocates on behalf of.

## IV. RELIEF REQUESTED

For the reasons set forth above, Dr. Lucas respectfully requests that this Honorable Court:

1. **Re-open Case No. 3:20-ap-03143** for further proceedings in light of the **fraud upon the court** and **newly discovered evidence** presented herein.

2. **Rescind the decision** regarding dischargeability under **§523(a)(6)** of the **Bankruptcy Code** in its entirety.

3. **Vacate the prior judgment** finding Dr. Lucas liable for willful and malicious injury, as the result of fraudulent misrepresentation and concealment of evidence.

4. Award Lucas treble the amount of the default judgement as a sanction against Simon and her co-conspirators as a deterrence from future plans to commit fraud upon the court. (Treble damages for tortious interference.)

5. Grant any further relief deemed just and proper by this Court.

**Respectfully submitted this 19th day of May, 2025.**

Dr. Kandise N. Lucas

**Pro Se**

10906 Sassafras Drive, N. Prince George, VA 23860, 804-248-8656, kandiselucas@gmail.com

### CERTIFICATE OF SERVICE

I certify that a copy of the above-reference motion  was mailed to the following on May 19, 2025::

    1)  Cheryl S. Tuck, Esq.
        11901 Iron Bridge Rd
        Chester, VA 23831

Dr. Kandise N. Lucas

### CHESTERFIELD COUNTY CIRCUIT COURT

AMANDA SIMON

**Plaintiff,**

v.                                          Civil Action No.

DR. KANDISE LUCAS,

**Defendant.**

<u>**IN OPPOSITION TO DEFAMATION CLAIM BY AMANDA SIMONS AND MOTION TO SET ASIDE JUDGMENTS BASED ON FRAUD UPON THE COURT, PERJURED WITNESS TESTIMONY, AND NEW EVIDENCE**</u>

**I. INTRODUCTION**

This legal memorandum is submitted in opposition to the defamation and emotional distress claims filed by Amanda Simons against Dr. Kandise Lucas and in support of a motion to set aside state and federal judgments entered against Dr. Lucas in *Chesterfield County Circuit Court* and *Case No. 20-03143-KRH (Bankr. E.D. Va.)*, based on evidence that was not available at the time of the previous proceeding, but was inadvertently disclosed by Chesterfield School Board Attorney Wendal Roberts in response to a FOIA Request by Mrs. Wendy Little. This shocking and compelling evidence, in which Tynesia Giles; a witness in the Simon v. Lucas trial; is identified as a co-conspirator in filing fraudulent criminal complaints of truancy against a family in collusion with the Sands Anderson law firm. Giles' actions affirm that Amanda Simon, while operating as a school social worker in Chesterfield County Public Schools did engage in the

falsification of criminal truancy charges with the same attorneys who were then employed by the Reed Smith Law Firm. It is upon information and belief that Reed Smith Law Firm colluded behind closed doors, in a cowardly manner, with Simon and her counsel of record to engage in this retaliatory action as a SLAPP suit.

Simon, Giles, her medical providers, and her attorneys; all committed **fraud upon the court, perjury,** and violations of federal and constitutional law via the "Eryn Little Procedures" in Chesterfield J and D court, Chesterfield Circuit Court, and federal bankruptcy court. The record, including declarations completed by **Mrs. Melissa Siddiqi, Ms. Michelle Williams,** and **Ms. Tameka Mayo;** affirmatively confirms that Simons knowingly filed **false and criminally retaliatory truancy complaints,** consistent with the same "Eryn Little Procedures" and directives that Dr. Lucas referenced in her protected advocacy. It is without dispute that Amanda Simon conspired to engage in the "Eryn Little Procedures" model; applying the criminal actions to create the ""Sean Backus, Jr. Procedures," "Parker Bolton Procedures" and the "Keagan Bolton Procedures," "Kaylah Jeffers Procedures," and "Caiyah Jeffers Procedures."

These "procedures" exemplify the epitome of lawfare, obstructing any and all federal protections and rights afforded under the IDEA, against our most vulnerable families…driven solely by malice, retaliation, personal gain, and profit. (We obtained the "Eryn Little Procedures" in 2024 from Chesterfield County Public Schools' School Board Attorney, Wendell Roberts, via a FOIA Request.....by accident, on purpose. We also learned that the "Eryn Little Procedures" were fraudulently concealed by Chesterfield County Public Schools and Sands Anderson and; and, in fact were not "attorney client privilege" as they were exempt under the "crime-fraud exception." The "Eryn Little Procedures" provide a step-by-step guide as to how to Conspire Against The Rights

3

of students, parents, guardians, and advocates of those with disabilities.  The "Eryn Little

Procedures" also affirm, undisputedly, that Sands Anderson maliciously conspires premeditated:

- Malicious prosecution for false criminal charges of truancy
- Pre-determines students' IEP services
- Obstructs any and all parental/guardian procedural safeguards
- Obstructs any and all FOIA and other records access rights
- Profits from illegally earned billable hours engaging in the unauthorized practice of
  special education
- Actively and illegally engages in the day-to-day school board contracted duties; imposing
  astronomical costs on taxpayers who fund two entities for the same duties; one of which
  is not licensed, contracted, nor endorsed to perform the duties.
- Routinely engage in illegal billing of duties outside of their client service agreement and
  licensure.

4

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

5

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

6

---

ATTORNEY-CLIENT PRIVILEGED

## IEP MEETINGS

Dr. Murray will work with Eryn's case manager to ensure that all matters related to IEP meetings are properly addressed.

### Scheduling:

- Eryn's case manager will attempt to obtain availability for both parents. However, it is only necessary that one of the parents attend.
- Eryn's case manager will retain all parent responses regarding availability. If Mrs. Little indicates that she is unavailable due to medical reasons, efforts should be made to find a mutually agreeable date if Mr. Little is unable to attend. If there is an applicable deadline, attempts should be made to get the parents to waive the deadline.
- Until CCPS receives parent consent to implement an IEP, CCPS should be requesting to reconvene an IEP meeting monthly. An IEP meeting will be required to discuss ESY services.

### Meeting Notices:

- Meeting Notices will be sent to both parents by Eryn's case manager. Mrs. Little has indicated that she prefers to meet in person at CTC Hull. Please list the location as CTC Hull/Swift Creek Middle School/Virtual Link.
- Do not list individuals on the draft IEP, indicating that they have been invited if, in fact, they have not been. For example, if consent has not been granted by the parent to invite a third party to the meeting, that person's name should not be listed on the meeting notice as someone who has been invited.
- Changes are needed to the meeting notices:
  - Meeting notices do not currently inform the parents of their right to invite individuals who have knowledge or special expertise about the student (and their right to determine whether their invitees meet that criterion). 8 VAC 20-81-110.E.2.a.
  - Currently, the meeting notice indicates that certain individuals have been invited to the meeting when they have not been invited.

### Drafts and Meeting Links:

- Drafts and Meeting Links will be sent to the parents by Eryn's case manager at least five business days prior to the meeting.
- When the meeting link is sent out, advise the Parent in the email that she can provide the link to individuals that she wishes to have attend the meeting.

### Preparation for IEP Meetings:

Prior to IEP meetings, the case manager will meet with the LEA representative and/or Dr. Gould and attorneys from Sands Anderson, PC to discuss the agenda for the upcoming meeting.

### Meetings:

- All meetings will be audio recorded by CCPS. Remember, VDOE or a Hearing Officer will be listening to the recording.

3

---

ATTORNEY-CLIENT PRIVILEGED

Applicable Regulations and Policies: All procedures shall conform with the IDEA (34 CFR 300.518), the Virginia Regulations (8 VAC 20-81-170(O)(45-8)), and School Board Policy §§ IGO(3).

### ATTENDANCE

Tynna Giles, CCPS' Director of Social Work, has initiated court proceedings for truancy. Ms. Giles will serve as the point of contact for all truancy related matters.

Should Eryn be enrolled at Swift Creek Middle School, Mr. Edward Maynes, the Principal at Swift Creek Middle School, will serve as the point of contact regarding any unexcused absences.

Dr. Murray will send any email communications received from Mrs. Little regarding attendance issues to Ms. Tynna Giles and Mr. Edward Maynes who will respond accordingly.

All communications to the Parents regarding unexcused absences will be sent in a letter format, and the letter will be sent via email to both parents.

Prior to the Student being truant/and after fifteen unexcused absences, CCPS will send a Prior Written Notice to the Parents informing the Parent of CCPS' intent to unenroll the Student pursuant to Virginia law. The PWN will be sent to Sands Anderson, PC for review prior to being sent to the Parents.

### FERPA REQUESTS TO INSPECT AND REVIEW RECORDS

Dr. Murray will work with the Principal (if need) to address the Parent's requests to under FERPA to inspect and review records. Under FERPA, a school division must provide a parent with an opportunity to inspect and review their child's education records within a reasonable period of time, but not more than 45 calendar days following receipt of a request. The Principal (if need) will ensure that it is documented when the Parent or her representative comes in person to inspect and review records.

### FOIA REQUESTS

All FOIA requests must be promptly forwarded to Mr. Wendell Roberts and Ms. Stephanie Smith at WendellR.roberts@ccpsnet.net and Stephanie_Smith@ccpsnet.net.

### IEE REQUESTS

Dr. Murray will ensure that Dr. Elatha Gould, the Director of Special Education, responds to all IEE requests in writing within a reasonable time. It is important for CCPS to continue to offer to administer the evaluations previously committed to by the Parent in January 2024.

3

**ATTORNEY-CLIENT PRIVILEGED**

## IEP MEETINGS

Dr. Murray will work with Eryn's case manager to ensure that all matters related to IEP meetings are properly addressed.

*Scheduling:*
- Eryn's case manager will attempt to obtain availability for both parents. However, it is only necessary that one of the parents attend.
- Eryn's case manager will retain all parent responses regarding availability. If Mrs. Little indicates that she is unavailable due to medical reasons, efforts should be made to find a mutually agreeable date if Mr. Little is unable to attend. If there is an applicable deadline, attempts should be made to get the parents to waive the deadline.
- Until CCPS receives parent consent to implement an IEP, CCPS should be requesting to reconvene an IEP meeting monthly. An IEP meeting will be required to discuss ESY services.

*Meeting Notices:*
- Meeting Notices will be sent to both parents by Eryn's case manager. Mrs. Little has indicated that she prefers to meet in person at CTC Hull. Please list the location as CTC Hull/Swift Creek Middle School/Virtual Link.
- Do not list individuals on the draft IEP indicating that they have been invited if, in fact, they have not been. For example, if consent has not been granted by the parent to invite a third party to the meeting, that person's name should not be listed on the meeting notice as someone who has been invited.
- Changes are needed to the meeting notices:
  - Meeting notices do not currently inform the parents of their right to invite individuals who have knowledge or special expertise about the student (and their right to determine whether their invitees meet that criterion). 8 VAC 20-81-110.E.2.a.
  - Currently, the meeting notice indicates that certain individuals have been invited to the meeting when they have not yet been invited.

*Drafts and Meeting Links:*
- Drafts and Meeting Links will be sent to the parents by Eryn's case manager at least five business days prior to the meeting.
- When the meeting link is sent out, advise the Parent in the email that she can provide the link to individuals that she wishes to have attend the meeting.

*Preparation for IEP Meetings:* Prior to IEP meetings, the case manager will meet with the LEA representative and/or Dr. Gould and attorneys from Sands Anderson, PC to discuss the agenda for the upcoming meeting.

*Meetings:*
- All meetings will be audio recorded by CCPS. Remember, VDOE or a Hearing Officer will be listening to the recording.

3

---

**ATTORNEY-CLIENT PRIVILEGED**

- The Parent must not be allowed to derail the IEP meeting. The Parent does not set the agenda of the meeting. Emphasize to the Parent that the elements of the IEP must be addressed.
- CCPS must never get to the end of a meeting and propose an IEP where the team has not discussed the necessary elements of the IEP.
- Mrs. Little has common topics that she often brings up. Have responses prepared to redirect the conversation. It is not helpful to have VDOE listen to an hour-long recording of Mrs. Little making false allegations, and there be no response from CCPS.

*Prior Written Notices:*
- Overall, the PWNs need to be more detailed and substantive going forward. It is imperative that the parents be able to read the PWN and understand how CCPS reached its decision on a specific action. The prior written notice document must specify the reasoning behind the school division's decision to reject the opinions of individuals or providers outside of the school division. For example, the following statement is unacceptable: "The team considered input from the Student's teachers and determined that private day school was not appropriate." This statement does not explain the reasoning behind the school division's rejection of private day school. See: (380586160104300000 (virginia.gov) for guidance.
- If, for some reason, the IEP team was unable to cover certain topics during the meetings due to the Parent's obstructionist behavior, state that in the PWN. Include in the PWN what the reasoning was for the proposal/refusal even if the team was unable to fully discuss the issue during the meeting.
- Eryn's case manager will send the PWN to the parents within 10 business days of the IEP meeting.
- All PWNs will be sent to Sands Anderson, PC for review prior to being sent to the parents. Eryn's case manager will send the audio recording of the meeting along with the draft PWN to Sands Anderson, PC for use in reviewing the PWN.

*SANDS ANDERSON, PC CONTACTS*

Jason H. Ballum
jballum@sandsanderson.com

LaToya H. Croxton
lcroxton@sandsanderson.com
(804) 783-7243

4

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

9

**ATTORNEY-CLIENT PRIVILEGED**

- The Parent must not be allowed to derail the IEP meeting. The Parent does not set the agenda of the meeting. Emphasize to the Parent that the elements of the IEP must be addressed.
- CCPS must never get to the end of a meeting and propose an IEP where the team has not discussed the necessary elements of the IEP.
- Mrs. Little has common topics that she often brings up. Have responses prepared to redirect the conversation. It is not helpful to have VDOE listen to an hour-long recording of Mrs. Little making false allegations, and there be no response from CCPS.

*Prior Written Notices*
- Overall, the PWNs need to be more detailed and substantive going forward. It is imperative that the parents be able to read the PWN and understand how CCPS reached its decision on a specific action. The prior written notice document must specify the reasoning behind the school division's decision to reject the opinions of individuals or providers outside of the school division. For example, the following statement is unacceptable: "The team considered input from the Student's teachers and determined that private day school was not appropriate." This statement does not explain the reasoning behind the school division's rejection of private day school. See 63805861601043000000 (virginia.gov) for guidance.
- If, for some reason, the IEP team was unable to cover certain topics during the meetings due to the Parent's obstructionist behavior, state that in the PWN. Include in the PWN what the reasoning was for the proposal/refusal even if the team was unable to fully discuss the issue during the meeting.
- Eryn's case manager will send the PWN to the parents within 10 business days of the IEP meeting.
- All PWNs will be sent to Sands Anderson, PC for review prior to being sent to the parents. Eryn's case manager will send the audio recording of the meeting along with the draft PWN to Sands Anderson, PC for use in reviewing the PWN.

*SANDS ANDERSON, PC CONTACTS*

Jason H. Ballum
jballum@sandsanderson.com

LaToya H. Croxton
lcroxton@sandsanderson.com
(804) 783-7243

4

---

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

10

## II. FACTUAL BACKGROUND

Amanda Simons, employed by Chesterfield County Public Schools (CCPS) as a school social worker, filed criminal truancy complaints against multiple parents of students with disabilities, including Siddiqi and Williams, **despite being aware that these families were engaged in ongoing educational placement disputes and/or medical homebound placements.** Both Ms. Siddiqi and Ms. Williams have now affirmed under penalty of perjury that Ms. Simons acted knowingly, maliciously, and in retaliation for protected activity under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1400 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.

Dr. Lucas, in her role as an education advocate, made statements that were consistent with facts known to her at the time and supported by the declarations now entered into the record. These statements were not defamatory, but rather constitute **protected expressions of opinion and whistleblower reporting** under both the **First Amendment** and the **ADA's anti-retaliation provisions**, 42 U.S.C. § 12203.

## III. LEGAL ARGUMENT

### A. Statements by Dr. Lucas Were True or Substantially True and Based on Official Records and Witness Declarations

**Truth is a complete defense to defamation.** See *Cashion v. Smith*, 749 S.E.2d 526, 532 (Va. 2013). The declarations by Siddiqi and Williams show:

1. Amanda Simons **knowingly filed criminal truancy charges** despite being aware of medical or placement exemptions;

11

2. She **refused to attend IEP meetings**, violating IDEA procedural safeguards (20 U.S.C. §
1415(b));

3. She **targeted parents** engaged in special education disputes, in retaliation for asserting
federally protected rights;

4. These acts **mirrored other retaliatory truancy filings** by CCPS, under the same
procedures identified by Dr. Lucas.

Thus, Dr. Lucas's statements regarding Simons's misconduct are not only **substantially true** but
made in **good faith reliance on facts and ongoing investigations**.

**B. Lucas's Communications Were Protected by the First Amendment and Whistleblower
Statutes**

Dr. Lucas's statements were:

- **Matters of public concern**, involving the welfare of students with disabilities;

- Directed to **state licensing boards, elected officials, civil rights organizations, and the
public**, where qualified privilege applies;

- Protected under the **ADA's anti-retaliation provision** and Section 504 retaliation case
law (see *Weixel v. Board of Education of City of New York*, 287 F.3d 138, 148 (2d Cir.
2002)).

Her speech is therefore protected under **First Amendment precedent**, including:

- *Pickering v. Board of Education*, 391 U.S. 563 (1968)

- *Garcetti v. Ceballos*, 547 U.S. 410 (2006)

- *Connick v. Myers*, 461 U.S. 138 (1983)

**C. Simons and her Counsel Committed Fraud Upon the Court and Should Be
Prosecuted Under Federal Law**

12

Federal law criminalizes perjury, fraud on the court, and aiding and abetting false claims. Based
on the evidence now available, Simons and her attorneys from Reed Smith LLP and others:

- **Knowingly presented false information** to tribunals (violating 18 U.S.C. § 1621 -
Perjury; § 1623 - False declarations);

- **Knowingly used fraudulent truancy complaints** to initiate criminal proceedings (in
violation of 18 U.S.C. § 241 - Conspiracy against rights, and § 242 - Deprivation of rights
under color of law);

- **Concealed material evidence** in Chesterfield and federal proceedings, including in *Case
No. 20-03143-KRH* and *3:24-cv-00874-REP*;

- **Violated Rule 11 and Rule 60(b)(3) of the Federal Rules of Civil Procedure**, by
presenting claims based on knowingly false evidence and suppressing contradictory
evidence.

**D. Judgments Must Be Set Aside Under Rule 60(b)(3) and (d)(3) of the Federal Rules of
Civil Procedure, As Must Be All Malicious Truancy Convictions Against Williams, Mayo,
and Siddiqi**

A federal judgment must be set aside under **Rule 60(b)(3)** for fraud, misrepresentation, or
misconduct by an opposing party, and **Rule 60(d)(3)** permits relief for **fraud upon the court**,
which includes:

> "Corruption of the judicial process itself... by officers of the court." — *Hazel-Atlas
> Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238 (1944)

13

The bankruptcy and circuit court rulings against Dr. Lucas were procured through **fraudulent concealment, material misrepresentations**, and **perjured declarations**, particularly regarding:

- The lawfulness of the truancy filings;
- The administrative context of IDEA placement disputes;
- The failure to consider Lucas's First Amendment and IDEA-protected advocacy roles. Accordingly, the judgments must be **vacated** as constitutionally invalid and **procured through fraud**.

**E. Call for Criminal and Disciplinary Action Against Amanda Simons and Attorneys**

The following statutes warrant investigation and prosecution:

- **18 U.S.C. § 1001** (False statements)

- **18 U.S.C. § 1512** (Tampering with a witness)

- **18 U.S.C. §§ 1341, 1343** (Mail and wire fraud in civil litigation)

- **Virginia Code § 18.2-434** (Perjury)

- **Virginia Rules of Professional Conduct Rule 3.3** (Candor to the tribunal)

- **Rule 4.1** (Truthfulness in statements to others).

14

Evidence from Siddiqi and Williams affirms that Simons, acting in concert with Chesterfield County Public School Board, Sands Anderson law firm/Reed Smith law firm, School Board Attorney Wendall Roberts, and Simon's attorneys, engaged in perjury and fraud that fundamentally compromised the integrity of judicial proceedings and imposed irreparable harm against Lucas and the families of students with disabilities that she advocates on behalf of. Lucas not only referred Simon to the Virginia Department of Health Professions for her criminal conduct, but also referred her to the FBI, as noted below, when the "Eryn Little Procedures" initially surfaced and were confirmed as "playbook" of Simon's colleague, Tynesia Giles, who testified on behalf of Simon; as well as naming Sands Anderson Attorney Jason Ballum as one of the masterminds behind the "Eryn Little Procedures." The deceased Ballum was also assigned to the Williams/Backus, Jr., Siddiqi/Bolton, and Mayo/Jeffers special education due process proceedings.

On Feb 1, 2023, at 10:43 AM, Garnett, Thomas A. (USAVAE) <Thomas.A.Garnett@usdoj.gov> wrote:

Ms. Lucas,

Good morning. I'm an Assistant US Attorney in Richmond, and received your email from Mike Gill. I wanted to let you know that I will be passing along your concerns to the FBI for their review and any investigative actions they deem appropriate. If you have any questions, please feel free to reach out to me.

Best,

Thomas A. Garnett
Deputy Criminal Supervisor
U.S. Attorney's Office
Eastern District of Virginia
(804) 819-5431

 From: justice.4kidz@yahoo.com
**Date:** January 31, 2023 at 11:41:05 AM EST
**To:** "Aber, Jessica D. (USAVAE)" <JAber@usa.doj.gov>, "Gill, Mike (USAVAE)"

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

15

<MGill@usa.doj.gov>
**Subject: [EXTERNAL] Perjury Allegation Regarding Amanda Simons: Chesterfield Circuit Court and Eastern District Bankruptcy Court**
**Reply-To:** "clucasklucas@yahoo.com" <clucasklucas@yahoo.com>

Dear US Attorneys Aber and Gill,

I am forwarding this communication and the February 7, 2020 Chesterfield Circuit Court transcript as well as the October 14, 2021 Eastern District Court transcript as undisputed documentation supporting the fact that Amanda Simons, a former Chesterfield County Public School Social Worker, committed perjury in both, circuit and federal court as a means of not only filing a malicious lawsuit against me, but securing a non-dischargeable debt under false pretenses within a bankruptcy proceeding.

We were referred to you by the Virginia Attorney General's office to request that you investigate the instances of perjury that Ms. Simons committed in federal bankruptcy court when she claimed that she enjoyed her job prior to 2018, and that Kandise Lucas was the reason that she left her role with Chesterfield County Public Schools. The transcript from February 7, 2020 will note that Ms. Simons was being treated by Dr. Burke since 2010, and that he has repeatedly recommended that she leave her role as a school social worker with Chesterfield County Public Schools due to the "dysfunction" of the school division. Once again, we request an immediate investigation into this allegation of perjury at the federal court level with immediate action to ensure that Ms. Simons and her attorney are held accountable criminally for their acts of perjury as well as aiding and abetting perjury.

In both, the circuit and federal courts, Amanda Simons and her attorney knowingly committed perjury; asserting that the reason that Ms. Simons experienced great distress while employed with Chesterfield County Public Schools as a School Social Worker was due to the complaints that I filed against her for falsely filing truancy charges against three single mothers of students with disabilities who have mental illnesses and trauma.

While Ms. Simons blamed me for no longer enjoying her employment role as of 2018, her therapist noted, as he testified to in the February 7, 2020 circuit court hearing, that well before 2018, Ms. Simons was experiencing mental anguish on her job due to heavy case loads, micromanaging, and the refusal of the district to help children.

While we have notified the Commonwealth Attorney of Chesterfield County, Stacy Davenport, nineteen times since May 2019, that Ms. Simons has committed perjury in the following instances:

1) While testifying during a special education administrative hearing

2) When presenting a criminal complaint of truancy to the Chesterfield County Juvenile Court

3) When indicating that she was not confronted regarding engaging in perjury by Attorney Jerrod Greene before the Chesterfield Court.

To date, we have not received an investigation into Ms. Simons' ongoing perjury at the administrative hearing, circuit court, and federal court levels; resulting in grave concern as to how a school division employee can escape consequences for intentionally, maliciously, and repeatedly committing perjury, which has resulted in the undermining of the judicial process and the lost of confidence in this process by our communities of color that advocate on behalf of students with disabilities.

Please see the summary below, and once again, the transcripts documenting Ms. Simons' perjury in the circuit and federal courts are undisputed, specifically when she asserted on October 14, 2021, before the federal court, that she:

Amanda Simons: I very much enjoyed my job, I very much enjoyed working with students...I very much enjoyed the professional connections that I made along the way...and I look forward to going to work every day.

However, on February 7, 2020, Ms. Simons and her therapist, Dr. Burke, provided just the opposite testimony as noted in the transcript:

**Laurie Burke, Amanda Simons' psychiatric nurse practitioner**

-Testified that Simons had been a patient of hers since 2014. Tr.20:19-20

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

16

-Testified that prior to November 14, 2018, Simons suffered from depression, anxiety, and panic attacks. Tr. 21:3-16

-Testified that prior to November 2018, Simons had panic attacks due to trigger related to her son and father. Tr. 29:15-23

-Testified that as of June 9, 2014, Simons had been diagnosed with Depression disorder, NOS; Personality Disorders, borderline diabetes, psychosocial environmental stressors, and also testified that Simons rates at a 60 in her current functioning status, which places her at moderate to mildly impaired. Tr. 35:12-25, 36:1-24

-Testified that Simons was assigned a new supervisor who was micromanaging her. Tr. 39:3-12

-Testified that Simons was complaining about her son's school environment and her work environment. Tr. 39:14-25

-Testified that Simons was experiencing work difficulties and stress as of October 10, 2017. Tr. 40:1-9

-Testified that Simons was having periods of sadness occasionally as of March 7, 2018. Tr. 40:15-21

-Testified that as of May 31, 2018, Simons was having a frustrating end of the year, stating that it is "hard advocating for children and it goes nowhere." Also notes that son had difficulty in college and ongoing stressors at work. Tr. 41:18-24 and 42:1-25.

-Testified that Simons did not see her for three months and that Simons reported on January 24, 2019 "did not work today, so that was good. Work is very stressful. Relationship with son not going well, setting limits. Feels rejected by him." Tr. 48; 4-25

-Testified that Simons was very anxious about selling the house and moving on March 18, 2019. Tr. 49:21-25

-Testified that Simons had stressors regarding her mother on March 18, 2019. Tr. 50:3-4

-Testified that Simons had seven therapy visits during the eight months leading up to November 2018, but on had three therapy visits after November 2018. Tr. 56: 5-8

**Dr. William Burke, Simons' Licensed Clinical Psychologist**

-Testified that Simons had been his patient since 2010. Tr. 65:25

-Testified that Simons had originally been diagnosed with Non-adjustment Disorder with Mixed Emotional Features and that he was treating Simons for depression, anxiety, and occasional episodic attacks. Tr. 67:1-25

-Testified that he had no knowledge or notations regarding the initial complaint filed against Simons by Lucas on April 10, 2019. Tr. 82:1-20

-Testified that there were no notes regarding Kandise Lucas' April 10, 2019 email requesting that Simons be investigated for filing false criminal complaints for truancy. Tr. 83:18-21

*JUSTICE FOR ALL CHILDREN!*

*"Speak up for the people who have no voice, for the rights of all who are down, Speak out for justice!-Proverbs 31:8*

*Kandise N. Lucas*
*Social Justice/Education Advocate*

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

17

*Advocates For Equity In Schools*
*804-248-8656*
*File a civil rights complaint:*
*https://ocrcas.ed.gov/*
*Become educated:*
*https://ugotnerve.wordpress.com/*


*"NEVER LET A BROKEN SYSTEM CONVINCE YOU THAT YOU HAVE A BROKEN CHILD"*

**IV. CONCLUSION**

For the foregoing reasons, it is respectfully requested that:

1. **All defamation and emotional distress claims** against Dr. Kandise Lucas be **dismissed with prejudice;**

2. **Judgments entered in Chesterfield County Circuit Court and federal bankruptcy court** be **vacated under Rule 60;**

3. **Criminal referrals** be made to the appropriate U.S. Attorney and Virginia Attorney General's Office for prosecution of Amanda Simons, Chesterfield Circuit Court Judge and her legal counsel for **fraud upon the court, perjury,** and **conspiracy;**

4. The court affirm the **First Amendment** and **federal civil rights protections** invoked by Dr. Lucas in her statements regarding public officials who knowingly endangered children and weaponized the court system against lawful parental and advocacy activity.

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

18

Respectfully,

Dr. Kandise N. Lucas
10906 Sassafras Drive
N. Prince George, VA 23860/kandiselucas@gmail.com/804-248-8656

Case 20-03143-KRH   Document 45 Filed 05/20/25   Entered 05/20/25 10:22:45 Desc
Exhibit(s) A - State Court Complaint   Page 1 of 7

**EXHIBIT A**

Exhibit C

VIRGINIA:
IN THE CIRCUIT COURT OF THE COUNTY OF CHESTERFIELD

AMANDA SIMONS

                                                        Plaintiff,

v.                                       AT LAW NO. _____

KANDISE LUCAS, individually and
d/b/a ADVOCATES FOR EQUITY IN SCHOOLS
SERVE AT: 514 E Williamsburg Road
            Sandston, Virginia 23160                    Defendant.

**COMPLAINT**

COMES NOW Plaintiff, AMANDA SIMONS ("Ms. Simons" or "Plaintiff") by counsel, for her Complaint against the Defendant, KANDISE LUCAS, states as follows:

**Jurisdiction and Venue**

1. Plaintiff is a resident of Chesterfield County, Virginia.

2. Upon information and belief, Defendant KANDISE LUCAS, individually and d/b/a ADVOCATES FOR EQUITY IN SCHOOLS (Defendant Lucas) is a resident of Sandston, Virginia and operates ADVOCATES FOR EQUITY IN SCHOOLS at either 1805 Monument Avenue, Suite 314, Richmond, Virginia or 4206 Chamberlayne Avenue, Richmond, Virginia.

3. The false statements made by Defendant Lucas were published in Chesterfield County, Virginia by and through email transmissions to persons located in Chesterfield County, Virginia and by a Facebook Live posting transmitted to persons located in multiple venues, including but not limited to Chesterfield County, Virginia.

Case 20-03143-KRH   Document 45 Filed 05/20/25   Entered 05/20/25 10:22:45 Desc
Exhibit(s) A - State Court Complaint   Page 2 of 7

**Defamation**

4. The Plaintiff repeats, repleads and incorporates by reference all of the allegations set forth in Paragraphs 1 through 3 as if fully and completely set forth herein.

5. Ms. Simons is a professional businesswoman employed as a School Social Worker for Chesterfield County Public Schools.

6. As a School Social Worker for Chesterfield County Public Schools, Ms. Simons' job duties included addressing attendance and truancy, which Defendant Lucas knew or should have known constituted Ms. Simons' job duties.

7. Despite such knowledge and/or notice of the scope of Ms. Simons' job duties and despite notice and knowledge of Virginia law regarding truancy and school attendance, Ms. Lucas knowingly and maliciously published untrue and knowingly false and defamatory written and oral statements about Ms. Simons in November 2018 to various persons, including but not limited to the following:

(a) On Wednesday, November 14, 2018 at 4:27p.m., Defendant Lucas emailed the Virginia Department of Health Professions, with the email copied to multiple individuals, filing a "formal complaint against Social Worker Amanda Simons for filing what she knew to be a false and retaliatory complaint of 'truancy.'" In such email, Defendant Lucas further stated that

> "Social Worker Simons has never attended an IEP Meeting to
> determine the needs of our students, nor to develop a safety
> plan. In fact, she violated the district's own policies and
> protocols to file this malicious warrant. We are requesting
> that her license be revoked for this egregious misconduct that
> is clearly reckless, and in no way in the best interests of our
> students.

2

Case 20-03143-KRH  Doc 26  Filed 03/09/21  Entered 11/28/2011 23:10:ID82052
Exhibit(s) A - State Court Complaint   Page 3 of 7

Commonwealth Attorney Miles, we also request that your office investigate this matter based on the fact that Ms. Simons committed perjury when she swore out this warrant, knowing that this is a placement dispute due to safety concerns, not a truancy matter. We are confident that Ms. Simons was advised to file this malicious action under the counsel Of the Reed Smith Law Firm's Mehfoud Directive, which seeks to force parents of students with special needs into compliance with academic placements that they have not consented to . . . We are also requesting that your office investigate the child endangerment and neglect that our students have been subjected to while at Reams Road Elementary that Ms. Simons refuses to investigate.

(b) On Friday, November 16, 2018 at 1:22p.m., Defendant Lucas emailed Betsy DeVos and Senator Tim Kelnos' office, with the email copied to multiple individuals, stating "Chesterfield County Public Schools Social Worker Amanda Simons committed perjury by filing a criminal complaint for truancy against our parent in retaliation for our parents seeking private placement. Simons refuses to investigate the allegations and admissions of abuse, isolation, and seclusion of our students by Reams Rd. Elementary Staff."

(c) On Monday, November 19, 2018 at 9:29a.m., Defendant Lucas emailed Deniaha Potts, MHA, Vice President, Interim Education Chair of the Chesterfield Branch NAACP, with the email copied to multiple individuals, stating the following:

Chesterfield County Public Schools Social Worker, Amanda Simons, filed what she know to be a false criminal complaint against our parent for truancy in an effort to coerce and bully our parent into sending our students to an educational placement that the school division dictated.

I have filed a complaint against Ms. Simons with the state. It should be noted that Ms. Simons has a history of engaging in

3

---

Case 20-03143-KRH  Doc 26  Filed 03/09/21  Entered 11/28/2011 23:10:ID82053
Exhibit(s) A - State Court Complaint   Page 4 of 7

those types of unethical practices that undermine the federal rights of our parents to have a voice in the educational placement of our students with disabilities. It should also be noted that Ms. Simons refuses to attend IEP Meetings when requested to address concerns, opting to criminalize parents that seek to advocate for safe and competent academic settings for our students with disabilities.

I should also add that a majority of the parents that the school division targets through Ms. Simons are single, economically-disadvantaged black mothers of students with disabilities.

We request that the Chesterfield Branch NAACP investigate her history of discrimination and retaliation.

(d) On or about November 18, 2018 going "Live" on Facebook to the public at large stating:

We have one situation in which um one of the social workers, Amanda Simons, if you know her, she's a social worker in Chesterfield. She filed a what she know to be a false criminal summons against one of our parents. Uh for truancy when the parent is trying to place her children in a school division, in a school setting that is safe, um, but Ms. Simons she issued a um a summons. She had a summons issued for this parent. Which is a Mehfoud directive tactic.

8.    The above statements by Defendant Lucas were intended to, and did, refer to the Plaintiff, and were, in their description or identification, such as to lead those who knew or knew of the Plaintiff to believe that the statements were intended to refer to her, and would be so understood by persons reading Defendant Lucas' emails and listening to Defendant Lucas' "Live" Facebook postings to refer to the Plaintiff.

9.    The above statements by Defendant Lucas are false.

10.    The above statements by Defendant Lucas were published by her with actual malice, that is, with knowledge that the statements were false and/or with reckless

4

disregard of whether such statements were false. Defendant Lucas knew such statements were false and knew that the "criminal complaint" referenced in her false publications arose from the fact that a parent had not enrolled her child in school and did not qualify for any of the exemptions for compulsory school attendance in accordance with Virginia law. The above statements were willfully designed by Defendant Lucas to discredit the Plaintiff in her profession and from their usual construction and common usage, are construed as insulting, malicious, defamatory, slanderous and libelous.

11. These false statements imputed to Plaintiff guilt of criminal activities; unfitness to perform and lack of integrity in the performance of the duties of her job; and constituted statements necessarily prejudicing the Plaintiff in her profession, and are as such defamation per se.

12. As a direct and proximate result of these false, malicious, insulting, defamatory and slanderous statements, Plaintiff has suffered humiliation, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, disgrace, and scandal, injury to her reputation and standing in the community, financial loss, health-related issues with medical expenses, and severe emotional injuries.

13. Defendants published these false statements with express malice, and with knowledge of their falsity or so recklessly as to amount to a willful disregard of the truth, thus entitling Plaintiff to an award of punitive or exemplary damages.

**Intentional Infliction of Emotional Distress**

14. The Plaintiff repeats, repleads and incorporates by reference all of the allegations set forth in Paragraphs 1 through 13 as if fully and completely set forth

5

herein.

14. Defendant Lucas' false statements regarding the Plaintiff were intentional.

15. Defendant Lucas' conduct in making such false statements was outrageous and intolerable.

16. As the direct and proximate result of Defendant Lucas' false statements, Plaintiff has suffered severe emotional injuries resulting from the shock and trauma proximately caused by Defendant Lucas' actions.

WHEREFORE, Plaintiff, AMANDA SIMONS, prays the Court award her the following:

1. Judgment against the Defendant in the amount of Two Hundred Thousand Dollars ($200,000.00) in compensatory damages for defamation against the Plaintiff;

2. Judgment against Defendant in the amount of Two Hundred Thousand Dollars ($200,000.00) in punitive damages for defamation against the Plaintiff;

3. Judgment against Defendant in the amount of One Hundred Thousand Dollars ($100,000.00) in compensatory damages for intentional infliction of emotional distress against the plaintiff;

4. Judgment against Defendant, in the amount of plaintiff's reasonable attorney's fees and costs expended herein.

5. Pre- and post-judgment interest thereon from November 14, 2018;

6. Such other and different relief as may be deemed appropriate under the circumstances of this case.

**PLAINTIFF REQUESTS TRIAL BY JURY.**

6

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

25

Case 20-03143-KRH    Doc 1 Filed 03/19/20 Case 20 11/09/20 12:23 Desc 0856
Exhibit(s) A - State Court Complaint    Page 7 of 7

**AMANDA SIMONS**

By: _Cheryl S. Tuck_
Of Counsel

Cheryl S. Tuck, Esquire VSB #35937
DANIELS, WILLIAMS, TUCK & RITTER
11601 Iron Bridge Road
P.O. Box 3570
Chester, Virginia 23831
    Phone:    (804) 748-9803
    Fax:    (804) 796-2706
    *Counsel for Plaintiff*

7

---

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

26

Case 20-03177-KRH    Doc 1 Filed 11/09/20 Entered 11/09/20 12:23 Page 1 of 57
Document      Page 1 of 6

Exhibit D.

Todd M. Ritter, Esquire (VSB # 40020)
Daniels, Williams, Tuck & Ritter
11601 Iron Bridge Road
P.O. Box 3570
Chester, Virginia 23831
(804) 748-9803
(804) 796-2706 (fax)
tritter@danielswilliamstuckandritter.com
*Counsel for Amanda Simons*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Richmond Division

| | | |
|---|---|---|
| In Re: | ) | |
| KANDISE NADINE LUCAS | ) | Case No. 20-33177-KRH |
| AKA Advocates for Equity in Schools | ) | Chapter 13 |
| Debtor. | ) | |
| | ) | |
| AMANDA SIMONS | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro.: |
| | ) | |
| KANDISE NADINE LUCAS | ) | |
| AKA Advocates for Equity in Schools | ) | |
| Defendant | ) | |
| | ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

COMES NOW, the Plaintiff, Amanda Simons ("Simons"), and for her Complaint

for the determination of non-dischargeability of debt against Debtor, Kandise Nadine

Lucas (aka Advocates for Equity in Schools)(hereinafter, "Lucas"), respectfully states as

follows:

**The Parties**

1.    Plaintiff ("Simons") is an individual residing in the County of

Chesterfield, Virginia.

1

Case 20-03143-KRH Doc Filed 07/09/20 Entered 07/09/20 Page 2 of 6
Document     Page 2 of 6

2.    Debtor, Kandise Nadine Lucas ("Lucas"), is the bankruptcy debtor in Case No. 20-33177-KRH, filed on July 23, 2020, in the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division.

3.    Lucas is a resident of the Commonwealth of Virginia with a home address of 514 East Williamsburg Road, Sandston, Virginia, in the County of Henrico, Virginia.

Jurisdiction and Venue

4.    This Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984.

5.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

6.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

Factual Allegations

7.    Simons is a professional, formerly employed as a School Social Worker for Chesterfield County Public Schools. In her capacity as a School Social Worker, Simons' job duties included addressing attendance and truancy.

8.    Lucas, at all relevant times, was an individual d/b/a ADVOCATES FOR EQUITY IN SCHOOLS, wherein she purported to offer advocacy services for special needs students in and around the Central Virginia area, including the County of Chesterfield.

9.    In November 2018, Lucas published false and defamatory statements regarding Simons to various parties.

10.    As a result of Lucas's defamatory statements, on March 19, 2019, Simons filed a Complaint in the Circuit Court of the County of Chesterfield seeking

2

---

Case 20-03143-KRH Doc Filed 07/09/20 Entered 07/09/20 Page 4 of 6
Document     Page 4 of 6

At the time the trial court announced its verdict, it indicated it would take up the issues of an award of costs, and the imposition of sanctions against Lucas, by a separate hearing.

14.    On February 18, 2020, Simons filed a Motion for Costs in the Circuit Court of Chesterfield County (See attached Exhibit D (pleading without attachments), seeking costs in the sum of three-thousand ($3,738.62). The matter was originally scheduled for a hearing on April 2, 2020.

15.    The Chesterfield Circuit Court continued the case for a determination of an award of costs and sanctions against Lucas, as well as entry of a final order of judgment. In the meantime, Lucas filed bankruptcy (Case No. 20-30950-KRH), which was dismissed on July 19, 2020. Lucas filed her present bankruptcy petition days later on July 23, 2020.

16.    The Chesterfield Circuit Court has already determined that Lucas is liable for compensatory damages of $65,000.00, and punitive damages of $45,000.00. In addition, Lucas is liable to Simons for damages deriving from her willful and malicious acts of defamation, including:

a.    Simons' Motion for Costs in the amount of $3,738.62. (See attached Exhibit D, referenced above).

b.    Simons' Claim for Sanctions (directly related attorney's fees in the amount of $4,390.00. (See, attached Exhibit E – Attorney's Fees Exhibit – Fees Sought To Be Awarded in Sanctions).

c.    Simon's Claim for Recovery of Attorney's Fees/Costs directly related to Lucas's failure to appear at a scheduled deposition (fees: $1,015.00; costs:

4

$208.55). See attached Exhibit F, Fees and Costs Exhibit related to failure to appear).

17.   Lucas's debt to Simons, as described above, is nondischargeable under 11 U.S.C. § 1328(a)(2) which excepts from a Chapter 13 discharge those debts of a kind specified in 11 U.S.C. § 523(a)(6).

WHEREFORE, your plaintiff, Amanda Simons, respectfully requests that this Court enter an Order in her favor declaring non-dischargeable the debt of Kandise Nadine Lucas to Amanda Simons in the minimum amount of $110,000.00, plus interest at 6% per annum from July 1, 2019, until paid; plus, amounts related to the state court litigation, including costs in the amount of $3,738.36, sanctions in the amount of $4,390.00, and additional attorney's fees and costs in the amount of $1,223.55; and, awarding Amanda Simons her costs incurred in this adversary proceeding, plus such other and further relief as this Court deems proper.

DATED: November 9, 2020       Respectfully submitted,

                               AMANDA SIMONS

                               By /s/ Todd M. Ritter
                                          Of Counsel

Todd M. Ritter, Esquire (40020)
Daniels, Williams, Tuck & Ritter
PO Box 3570
Chester, Virginia 23831
(804) 748-9803
(804) 796-2706 (fax)
tritter@danielswilliamstuckandritter.com

5

---

**DECLARATION OF MELISSA SIDDIQI**

**IN SUPPORT OF FEDERAL CIVIL RIGHTS COMPLAINT**

I, **Melissa Siddiqi**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct to the best of my knowledge, information, and belief:

1. I am the biological and legal parent of **P.B. and K.B.**, both of whom are students with disabilities as defined under the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act, and the Americans with Disabilities Act (ADA).

2. In accordance with the recommendations and medical certifications provided by the licensed healthcare providers treating P.B. and K.B., both children were placed on **Medical Homebound Instruction** due to significant health and safety concerns related to their disabilities and the failure of Chesterfield County Public Schools (CCPS) to provide a Free Appropriate Public Education (FAPE) in a safe and non-discriminatory environment.

3. Despite receiving the required documentation from these licensed providers, including formal Medical Certification of Need, Chesterfield County Public Schools—acting through **Amanda Simons,** School Social Worker, in coordination with **Tynesia Giles,** and under the direction and legal advisement of **ReedSmith** and **Sands Anderson**—maliciously filed criminal truancy charges against me.

4. These charges were filed **knowingly and falsely**, with deliberate disregard for the medical records, procedural safeguards, and parental rights protected under state and federal law. The goal was to **retaliate** against me for advocating for an appropriate and safe educational placement for my children.

5. **Amanda Simons** knowingly misrepresented the attendance status of my children to law enforcement and the courts, swearing out a criminal complaint under false pretenses, despite documentation that my children were excused for medical reasons.

6. **Tynesia Giles**, acting in her capacity with CCPS and in conspiracy with Amanda Simons, ReedSmith, and Sands Anderson, willfully **withheld, misrepresented, or ignored medical and educational records** that clearly documented my children's eligibility for homebound instruction and excused absences. Ms. Giles failed in her professional and legal duty to investigate or report the educational neglect and disability-based discrimination occurring within CCPS.

7. **The intent of this coordinated action** was to silence, intimidate, and retaliate against me as a parent of disabled students. This malicious prosecution caused immense emotional, financial, and reputational harm to me and placed my children at continued educational and psychological risk.

8. These acts constitute **civil rights violations** under:

   o The Individuals with Disabilities Education Act (20 U.S.C. § 1415)

   o Section 504 of the Rehabilitation Act (29 U.S.C. § 794)

   o Americans with Disabilities Act (42 U.S.C. § 12203)

   o Civil Rights Act of 1871 (42 U.S.C. § 1983)

   o Conspiracy against rights (18 U.S.C. § 241)

   o Deprivation of rights under color of law (18 U.S.C. § 242)

   o Retaliation and witness tampering (18 U.S.C. § 1512)

9. I am requesting full remedies available under the law, including:

   o Dismissal and expungement of all false truancy charges;

   o Compensatory and punitive damages for emotional distress, reputational harm, and financial loss;

   o Sanctions, license revocation, and legal accountability for Amanda Simons, Tynesia Giles, ReedSmith, Sands Anderson, and all other parties involved;

   o Federal investigation into systemic civil rights abuses by Chesterfield County Public Schools.

I affirm under penalty of perjury that the above is true and correct.

Executed on this 4th day of April, **2025.**

*Melissa Siddiqi*

Parent of P.B. and K.B.

Lucas'MotionForFederalPerjuryProsecutionofAmandaSimon 4.17.25

33

**10:52**     .nil LTE 58

✕        **Encounter with Amanda Si...**     

**My Encounter with Amanda Simons-Former CCPS' school social worker Virginia LNF-6990006069**

Dear Reader,
The following is two year (2017-2019) horrendous ordeal I was involuntarily trafficked into with Amanda Simons, Former chesterfield county school social worker.

Amanda Simons reached out to me as it related to one of my children as it relates to alleged school absenteeism. Amanda notified me that she had been referred about my younger son absences and compared his with his sisters.

I know this to be false information she'd received, without delay I communicated with Amanda. Letting her know that I'd already notified my child's school to update the incorrect absences, I also invited Amanda to have copies of my child's medical and parental notes.

Amanda refused to attend IEP meetings to discuss my children's attendances, review emails from myself to the schools, medical notes. I had to force Amanda to visit falling creek middle school to infact learn and hear for herself that FCMS infact was aware of the circumstances surrounding my daughter.

Amanda came to the school yet failed at  attempting to present her information to myself before the IEP meeting participants arrived.
As these participants could confirm, the information I would be presenting As such would dismiss the allegations that my daughter and son were stated to have chronic,unexcused attendance.

My daughters casemanger stated that I infact did let the school know when and why my daughter was not at school (bullying, harassment,medical) the casemanager also stated that they were having technology issues with their attendance system.

Amanda wasn't pleased that she could not gain a truancy case against myself.Amanda stated that she would close both students attendance cases and hastily left the room.

A short while later I recieved a letter from Amanda stated that. My students would be placed in "monitoring" status for their attendance. It was then I filed a citizen's complaint against Amanda Simone, Who refused to show up at the citizens complaint meeting.

Instead,  it was her supervisor to whom I met with.  After the meeting I recieved a letter actually closing both students cases.

During this timeframe I was conducting a custody case for both of my students. I learned that Amanda Simon and the GAL were working in unison to attempt to strip me of

custody pertaining to both of my children. ( both Amanda and the GAL failed at their attempts, in the back to back custody cases.)

Amanda Simon does let conduct her oath as a school social worker. Amanda is not fair, impartial, Amanda does not conduct her duties in the manner of having "GOOD FAITH". Amanda Simon, never over provided any resources, support to my children nor myself. Instead Amanda retaliated against myself,children,& Advocate.

In Closing,
I have emails, documents, that support my above encounters with Amanda Simon.

Best;
*Ms. Michelle Williams*
Ms. M. Williams